UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

SMART RECOVERY TECHNOLOGIES LLC,

                          Plaintiff,

          -v-

SUPPLIES PLUS MI LLC, et al.,

                      Defendants.

------------------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED:  03/20/2026__

24-cv-7406 (LJL)

<u>OPINION AND ORDER</u>

LEWIS J. LIMAN, United States District Judge:

Defendants Supplies Plus MI, LLC, Supplies Plus FL. INC., Supplies Plus NY-FL LLC, Robert S. Super, D.C., and Richard Geller (collectively, the "Defendants") move for an order, pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6), and 12(c), dismissing the first amended complaint ("FAC") against them and granting them judgment on the pleadings.  Dkt. No. 39.  For the following reasons, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

The Court accepts the allegations of the FAC as true for purposes of this motion.

## I.      The Relevant Parties

Plaintiff Smart Recovery Technologies LLC ("Plaintiff" or "Smart Recovery") is a distributor of durable medical equipment ("DME") specializing in FDA-cleared therapeutic devices and regenerative therapies for muscoloskeletal injuries.  Dkt. No. 36 (the "FAC") ¶ 10. Its products are prescribed by physicians to treat patients who have sustained accident- or workplace- related injuries.  *Id.* ¶ 11.  Its sole principal place of business is in Quakertown, Pennsylvania, and its two members, James Molinaro and James Morton, are both citizens of the

Commonwealth of Pennsylvania. *Id.* ¶¶ 12–13.

Supplies Plus-MI is a Michigan-based licensed distributor of durable medical equipment in the State of Michigan. *Id.* ¶ 18. All members of Supplies Plus-MI are citizens of the State of Florida. *Id.* ¶ 19. Supplies Plus FL, Inc. ("Supplies Plus-FL") is a Florida for-profit corporation. *Id.* ¶ 20. Supplies Plus NY-FL, LLC ("Supplies Plus NY-FL") is a Florida limited liability company engaged in the business of durable medical equipment. *Id.* ¶¶ 28, 30.

Robert Super, D.C. ("Super") is a chiropractor and resident of the State of Florida. *Id.* ¶ 35. Richard Geller ("Geller") is an attorney and resident of the State of Florida. *Id.* ¶ 39. Super and Geller are members or shareholders of Supplies Plus-MI, Supplies Plus-FL, and Supplies Plus NY-FL. *Id.* ¶¶ 36, 40. Since July 7, 2022, Super has been the registered agent of Supplies Plus-MI. *Id.* ¶ 17. Super and Geller are both directors or officers of Supplies Plus-FL, with Super most recently holding the position of Chief Executive Officer and Geller that of President. *Id.* ¶ 26.

## II.    The Memorandum of Understanding

In or around January 2022, Super and Geller approached Smart Recovery with a proposal for the distribution of Smart Recovery's DME. *Id.* ¶ 54. Super and Geller proposed that Supplies Plus-MI would distribute Smart Recovery's PainAway Home Care Laser 2.0 and sam Pro 2.0 DME devices ("Smart Recovery's DME") to its network of Michigan-based and New York-based medical providers. *Id.* ¶ 55. Supplies Plus-MI would then provide billing services to insurance carriers to collect payments for the DME services. *Id.* As an inducement, Super and Geller proposed that Supplies Plus-MI would pay Smart Recovery the cost of the DME provided by Smart Recovery, regardless of whether any amounts were collected by Supplies Plus-MI, plus fifty percent of the net collections Supplies Plus-MI received for dispensing Smart Recovery's DME for the legitimate treatment of the ordering providers' patients. *Id.* ¶ 64.

The proposed arrangement involved Supplies Plus-MI distributing Smart Recovery's DME to Michigan-based ordering providers directly, serving as the supplier of record for items dispensed to patients in Michigan. *Id.* ¶ 62. Supplies Plus-MI would then be responsible for ensuring that Smart Recovery would be paid for the acquisition costs of its DME in accordance with an agreed-upon formula with Smart Recovery. *Id.* ¶ 63. Dr. Jeffrey Rauch ("Rauch"), a practicing chiropractor in New York, would handle the process of providing the DME to healthcare providers in New York and the billing of insurers for the use of Smart Recovery's DME in New York. *Id.* ¶ 57. Rauch was, for one month immediately after the company was incorporated, the Vice President and Secretary of Supplies Plus-FL. *Id.* ¶¶ 59, 24–25. Further, Geller and Super advised that insurance claims for the use of Smart Recovery's DME in New York would be handled by Supplies Plus-FL. *Id.* ¶ 58.

On July 12, 2022, Smart Recovery entered into a memorandum of understanding ("MOU") with Supplies Plus-MI. *Id.* ¶ 49, 109; Dkt. No. 32-1.[1] The MOU recited that Smart Recovery was the national wholesaler of the PainAway Home Care Laser 2.0 and sam Pro 2.0 in the United States and that Supplies Plus-MI was a licensed DME distributor in Michigan who would be offering the Smart Recovery DME to its providers and clinics in Michigan and New York for personal injury patients. Dkt. No. 32-1 at 1. Supplies Plus-MI would be "responsible for billing and collection from the Personal Injury Insurance Company[s] for the fees" of the Smart Recovery DME and would "set the rental fees with the Personal Injury Insurance Company(s) for the Smart Recovery DME." *Id.* It also would enter into Lease and Services Agreements with Supplies Plus-MI providers. *Id.* The MOU further provided that it was

---

[1] Although the MOU was not attached as an exhibit to the FAC, it is incorporated by reference and may be considered by this Court in the current posture. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

Plaintiff's obligation to ship such devices to Supplies Plus-MI "Providers" and that the "Providers" were obligated to collect the DME devices "from the patients at the conclusion of the rental period." *Id.*

In the MOU, Supplies Plus-MI agreed to pay Smart Recovery 50% of the net collections from the personal injury insurance companies and to provide Smart Recovery a Login link to its billing and collection tracking system to view pending and paid personal injury or workers compensation claims. *Id.*

Also relevant here, the MOU contains an integration provision:

> *Entire Agreement.*  This Agreement represents the only agreement between the parties concerning the subject matter hereof and supersedes all prior agreements, whether written or oral, relating hereto.

*Id.* at 2.  The MOU also contains a dispute resolution provision.  It states:

> The Parties understand and agree that any disputes that arise out of or relate to this Agreement and the Parties' relationship pursuant hereto, shall be venued in the state or federal courts for the State of Michigan or the State of New York.  The parties further understand and agree that in the event a court of competent jurisdiction finds that either Party is the prevailing party in a dispute commenced pursuant to this paragraph, then the prevailing party shall be entitled to an award of its reasonable costs and attorneys' fees incurred in enforcing or defending its rights under this Agreement.

*Id.* at 4.

## III.    The Delivery of Smart Recovery DME

Smart Recovery began providing its DME for Michigan-based providers and, through Rauch, to New York-based providers after executing the MOU.  FAC ¶ 78.  Between February 7, 2022 and August 13, 2022, it delivered 89 separate DME devices to physicians and their patients in New York and Michigan in accordance with Defendants' instructions.  *Id.*  In total, 44 PainAway Lasers and 20 sam 2.0 devices were provided to Michigan-based providers.  *Id.* ¶ 79. Smart Recovery also provided 25 PainAway Lasers to New York based providers to Rauch,

4

through Supplies Plus-FL.  *Id.* ¶ 80.

Smart Recovery invoiced Supplies Plus-MI and Supplies Plus-FL a total of $442,188 for the 89 Smart Recovery DME.  *Id.* ¶ 82.  To date, however, Smart Recovery has yet to receive any payment from Supplies Plus-MI and/or Supplies Plus-FL for the invoiced cost of any of the Smart Recovery DME that Supplies Plus-MI purchased, received, and/or distributed pursuant to the MOU.  *Id.* ¶ 84.  Supplies-Plus MI also has failed to provide Smart Recovery a login link to Supplies Plus-MI's billings and collections tracking system.  *Id.* ¶ 87.  It also has failed to consistently provide Smart Recovery the monthly billing and collection reports, despite billing personal injury carriers for the use of Smart Recovery's DME devices.  *Id.* ¶¶ 89–95.

Plaintiff alleges on information and belief that Supplies Plus-MI "sold, assigned, or otherwise transferred the rights to its personal injury receivables and worker's compensation receivables to a personal injury law firm in Florida, the Geer Law Firm, for approximately thirty (30) cents on the dollar."  *Id.* ¶ 97.  Further, it alleges that Super and Geller used "funds from this transaction to purchase a building in Michigan and a new condominium in Florida," and that they "attempted to hide the monies received by giving a $1.5 million personal loan to Attorney Stephen Falzon."  *Id.* ¶¶ 98–99.

Plaintiff requested that Rauch return the 25 lasers that were distributed to him.  *Id.* ¶ 102. To date, Rauch has only returned six of the 25 PainAway Lasers.  *Id.* ¶ 104.

On June 28, 2023, Smart Recovery sent a demand letter through counsel to Super seeking "payment of the invoices to both Supplies Plus-MI and Supplies Plus-FL."  *Id.* ¶ 105.  Smart Recovery, upon not receiving a response, reached out through counsel by telephone to Super, who "advised that Smart Recovery direct all communications to his counsel, Mr. Geller."  *Id.*

¶ 106. Defendants "have failed to cure any of the defects, pay any of the invoices, or substantively explain the discrepancy in the amount billed and net collections." *Id.* ¶ 107.

## PROCEDURAL HISTORY

This case was initiated by a complaint filed on October 2, 2024. Dkt. No. 13.[2] Defendants Supplies Plus NY-FL LLC, Robert S. Super, D.C., and Richard Geller answered on November 21, 2024. Dkt. No. 17. On April 1, 2025, Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6), and 12(c). Dkt. No. 30.

On April 18, 2025, Plaintiff filed a First Amended Complaint ("FAC"). Dkt. No. 36.[3] The FAC contains seven counts. In Count I, Plaintiff alleges that Supplies Plus-MI breached the MOU by, *inter alia*, failing to make any payments contributing to the invoiced amount for the Smart Recovery DME, failing to provide access to the billing and collections tracking system, and concealing information and data from Smart Recovery regarding the use of Smart Recovery DME. *Id.* ¶ 114. In Count II, which is pleaded as an alternative to Count I, Plaintiff alleges that it formed an implied in fact contract with Supplies Plus-FL and Supplies Plus NY-FL through Geller and Super pursuant to which Smart Recovery would be paid the invoiced costs for its DME, and that Supplies Plus-FL and Supplies Plus NY-FL breached that implied in fact contract by failing to pay the invoices sent with Smart Recovery's DME and failing to make their billing and collection tracking system available to Smart Recovery. *Id.* ¶¶ 117–22. Count III alleges that each Defendant unlawfully converted the Smart Recovery DME. *Id.* ¶¶ 123–128. Count IV alleges promissory estoppel against Supplies Plus-MI, Geller and Super; Plaintiff alleges that the

---

[2] Plaintiff attempted to file a complaint on October 1, 2024. It was rejected for a filing error. Dkt. No. 1.

[3] Upon the filing of the FAC, the Court denied the motion to dismiss the original complaint as moot. Dkt. No. 38.

three made promises to Smart Recovery concerning the manner in which terms of the MOU would be implemented and failed to fulfill those promises. *Id.* ¶¶ 129–34. Count V alleges that all Defendants have been unjustly enriched by their unauthorized use, distribution, and retention of the Smart Recovery DME as well as funds, accounts receivable and other billing and collection associated with those devices. *Id.* ¶¶ 135–39. Count VI alleges that Supplies Plus-MI breached an implied covenant of good faith and fair dealing in the MOU by, *inter alia*, utilizing businesses in which Geller and Super had an interest to process healthcare provider claims for treatment in a manner to benefit Defendants at the expense of Plaintiff. *Id.* ¶¶ 140–46. And Count VII alleges that Super, Geller, Supplies Plus-FL and Supplies Plus NY-FL tortiously interfered with Plaintiff's MOU with Supplies Plus-MI by causing Supplies Plus-MI to fail to compensate Plaintiff in accordance with the MOU and to convert funds intended to be consideration to Plaintiff for the benefit of others and causing the denial of accession to the billing and collection tracking system. *Id.* ¶¶ 147–54.

Defendants filed this motion to dismiss the FAC on May 2, 2025. Dkt. No. 39. Defendants also filed a memorandum of law in support of the motion. Dkt. No. 40. Plaintiff filed a memorandum of law in opposition to Defendants' motion to dismiss on July 25, 2025. Dkt. No. 49. On August 15, 2025, Defendants filed a reply memorandum of law in further support of their motion to dismiss. Dkt. No. 59.

## LEGAL STANDARD

"A court facing challenges as to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question" and must dismiss the action against any defendant over whom it lacks personal jurisdiction. *Lugones v. Pete & Gerry's Organic*, LLC, 2020 WL 871521, at *2 (S.D.N.Y. Feb. 21, 2020) (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963)); *see* Fed. R. Civ. P. 12(b)(2).

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). At a pleading stage, a plaintiff need make only a prima facie showing by its pleadings and affidavits that jurisdiction exists, and such a showing may be established solely by allegations. *Id.* at 84–85. This prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* at 85. While the Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs," *id.*, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation," *In re Terrorist Attacks on Sept. 11, 2011*, 714 F.3d 659, 673 (2d Cir. 2013). When a plaintiff fails to make the requisite showing of jurisdiction over a defendant, the appropriate remedy is dismissal of all claims against that defendant without prejudice. *TAGC Mgt., LLC v. Lehman*, 2011 WL 3796350, at *3 (S.D.N.Y. Aug. 24, 2011).

"[O]n a motion to dismiss for improper venue pursuant to Rule 12(b)(3), 'the burden of proof lies with the plaintiff to show that venue is proper.'" *Spiciarich v. Mexican Radio Corp.*, 2015 WL 4191532, at *2 (S.D.N.Y. July 10, 2015) (quoting *Cartier v. Micha, Inc.*, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007)). Upon a finding of improper venue, a court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "It is well established that a plaintiff must

8

establish proper venue for each defendant." *Berall v. Teleflex Med. Inc.*, 2022 WL 2666070, at *3 (S.D.N.Y. July 11, 2022); *accord Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F. Supp. 2d 349, 363 (E.D.N.Y. 2007) (Bianco, J.). "A court applies the same standard of review in Rule 12(b)(3) dismissals as Rule 12(b)(2) dismissals for lack of jurisdiction." *Fedele v. Harris*, 18 F. Supp. 3d 309, 316 (E.D.N.Y. 2014).

On a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002). This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). The ultimate question is whether a "claim has facial plausibility," which is established where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Twombly*, 550 U.S. at 556; *see Mattrixx Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).[4]

---

[4] The Court evaluates Plaintiff's motion for judgment on the pleadings concurrently and under

**DISCUSSION**

Defendants argue: (1) the Court does not possess personal jurisdiction over them, Dkt. No. 40 at 12–20; (2) the FAC does not state a claim for breach of contract against Supplies Plus-MI, *id.* at 20–22; (3) the FAC does not allege a claim in quasi-contract against Supplies Plus-FL or Supplies Plus -NY-FL, *id.* at 22–24; (4) the FAC does not state a claim for conversion against any of the Defendants, *id.* at 24–25; (5) the FAC does not state a claim for breach of the implied covenant of good faith and fair dealing against Supplies Plus-MI, *id.* at 25; and (6) the FAC does not state a claim for tortious interference with contractual relations against Supplies Plus-FL, Supplies Plus NY-FL, Super, or Geller, *id.* at 25–26.

**I.    Personal Jurisdiction[5]**

"To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the Court must engage in a two-step analysis." *Chloe v. Queen Bee of Beverly Hills*, *LLC*, 616 F.3d 158, 163 (2d Cir. 2010). First, the court considers whether there is a basis for personal jurisdiction under the laws of the forum state. *Id.*; *see also D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). Second, the court examines whether the exercise of personal jurisdiction comports with constitutional due process. *See Chloe*, 616 F.3d at 164; *see also Licci ex rel Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2014).

**A.    State Law**

New York law provides "two ways to establish personal jurisdiction over a defendant: (1)

---

the same standard as Defendants' motion to dismiss. *See Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that [for granting] a Rule 12(b)(6) motion for failure to state a claim." (citation omitted)); *Lively v. WAFRA Inv. Advisory Grp.*, Inc., 6 F.4th 293, 301 (2d Cir. 2021) ("To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation omitted)).
[5] Although Defendants have moved to dismiss the FAC under Rule 12(b)(3), they have presented no independent argument on that ground.

'general jurisdiction' under N.Y. C.P.L.R. § 301; and (2) 'specific jurisdiction' under N.Y. C.P.L.R. § 302." *Kreit v. Byblos Bank S.A.L.*, 2023 WL 6977448, at *4 (S.D.N.Y. Oct. 22, 2023), *aff'd*, 2025 WL 338194 (2d Cir. Jan. 30, 2025) (summary order).

General jurisdiction exists under C.P.L.R. § 301 if the defendant is domiciled in New York or has "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) (quoting *McGowan v. Smith*, 419 N.E.2d 321, 323 (N.Y. 1981)). Specific jurisdiction exists under C.P.L.R. § 302(a)(1) over any non-domiciliary who in person or through an agent "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. 302(a).

Plaintiff does not assert that the Court has general jurisdiction over any of the Defendants. *See* Dkt. No. 49 at 5 ("Plaintiff does not allege general personal jurisdiction over the other defendants"). Instead, Plaintiff grounds jurisdiction in consent and specific jurisdiction. It alleges that Supplies Plus-MI consented to jurisdiction in New York under the terms of the MOU, FAC ¶ 49, and that personal jurisdiction exists over Supplies Plus-FL, Supplies Plus NY-FL, Super and Geller because "the conduct of each defendant concerning their business dealings with Smart Recovery has had, and continues to have, substantial contacts with the State of New York concerning the MOU and Smart Recover's supplying of [Smart Recovery DME] to 'New York based Provider(s) to dispense to their personal injury patients,'" *id.* ¶ 50.

Defendants argue that the Court lacks personal jurisdiction over Supplies Plus-MI because the FAC does not allege all of the elements of a claim for breach of contract. Dkt. No. 40 at 20. They argue that the Court lacks personal jurisdiction over the remaining Defendants because Plaintiff does not plead facts establishing specific jurisdiction. *Id.* at 12–20.

11

### 1.    Supplies Plus-MI

Parties may consent to personal jurisdiction by executing an enforceable forum-selection clause. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n.14 (1985); *D.H. Blair*, 462 F.3d at 103 ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."). "Where an agreement contains a valid and enforceable forum selection clause . . . it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process" as to the parties bound by that agreement. *Export-Import Bank of U.S. v. Hi-Films S.A. de C.V.*, 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010); *see Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F.Supp.2d 328, 333 (S.D.N.Y.2005) ("A valid forum selection clause establishes sufficient contacts with New York for purposes of jurisdiction and venue."). Assenting to "[a]n enforceable forum selection clause amounts to consent to personal jurisdiction." *Farrell Lines Inc. v. Columbus Cello–Poly Corp.*, 32 F. Supp. 2d 118, 127 (S.D.N.Y. 1997). Courts will uphold a forum selection clause if (1) it has been reasonably communicated to the parties; (2) it was not obtained through fraud or overreaching; and (3) its enforcement would not be unreasonable and unjust. *See D.H. Blair*, 462 F.3d at 103. "[Q]uestions of enforceability are resolved under federal law, while interpretive questions—questions about the meaning and scope of a forum selection clause—are resolved under the substantive law designated in an otherwise valid contractual choice-of-law clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 224 (2d Cir. 2014).

Supplies Plus-MI is subject to personal jurisdiction in this Court under the terms of the MOU, which states that "[t]he Parties understand and agree that any disputes that arise out of or relate to this Agreement and the Parties' relationship pursuant hereto, shall be venued in the state or federal courts for the State of Michigan or the State of New York." Dkt. No. 32-1 at 4. It is undisputed that the terms of the forum selection clause were clearly and reasonably

12

communicated to Supplies Plus-MI.  Nor does Supplies Plus-MI contend that the clause was obtained through fraud or overreaching.  It also does not argue that enforcement of the clause would be unreasonable or unjust.  Indeed, Supplies Plus-MI's only argument against enforcement of the clause is that the FAC fails to state a claim for relief.  However, whether Plaintiff has stated a claim for contractual breach or not has no bearing on the enforceability of the forum selection clause.  Defendants conflate the merits of their motion to dismiss for failure to state a claim with enforceability of the forum selection clause for the purposes of the motion to dismiss for lack of personal jurisdiction.  Because it is not contested that the clause is enforceable, that argument fails.

### 2.    Supplies Plus-FL, Supplies Plus NY-FL, Geller, and Super

Defendants argue that the FAC contains no legally sufficient allegations establishing a connection between Supplies Plus-FL, Supplies Plus NY-FL, Geller, or Super and New York. Dkt. No. 40 at 20.  Plaintiff responds that the Court has specific jurisdiction over those defendants with respect to each claim asserted under CPLR § 302(a)(1).  Dkt. No. 49 at 5–6.[6]

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."  *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).  "A defendant who is not domiciled in New York need not be physically present in the state to 'transact business' there."  *Lively v. Wayfarer Studios* LLC, 2025 WL 3085598, at *12 (S.D.N.Y. Nov. 5, 2025).  Transacting business under C.P.L.R. § 302(a)(1) requires only "purposeful activity"—that is, "volitional acts" through which a

---

[6] Defendants' argument that Plaintiff cannot establish personal jurisdiction over the parties that were not signatories to the MOU because that document contains a merger clause, Dkt. No. 40 at 19, is specious.  If the Court enjoys personal jurisdiction under the CPLR, the merger clause does not strip it of that jurisdiction.

defendant "avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Al Rushaid v. Pictet & Cie*, 28 N.E.3d 1, 7 (N.Y. 2016) (citation omitted).  The Second Circuit has held that "Section 302 is a single act statute" such that "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Chloe*, 616 F.3d at 170.

The sole allegations in the FAC supporting personal jurisdiction as to Supplies Plus-FL, Supplies Plus NY-FL, Super and Geller are that the MOU was drafted to supply Smart Recovery DME to New York-based providers and that "Defendants Super and Geller, in their capacities as the principal members and shareholders of Supplies Plus-MI, Supplies Plus-FL and Supplies Plus NY-FL had multiple meeting with Smart Recovery's members . . . and others . . . , in New York to discuss the deployment of Plaintiff's DMS into the New York market."  FAC ¶¶ 50–51. It is alleged that those meetings included "in-person marketing and promotional meetings with Smart Recovery and/or Jeffrey Rauch, D.C., including events in New York," "numerous marketing and strategy discussions/sessions concerning the distribution of Smart Recovery's DME . . . in New York state [sic]," and an in-person meeting in Queens on or about October 12, 2022. *Id.* ¶ 51(a)–(c).  Plaintiffs also allege that Super directed that invoices for and shipments of Smart Recovery's DME intended for the New York marketplace be sent instead to his Florida residence. *Id.* ¶¶ 6–7, 51(d).

It is not contested that Super and Geller were in New York for the purpose of facilitating the distribution of DME to New York patients.  Dkt. No. 49 at 6.  The distribution of Plaintiff's DME in New York, and the Defendants' failure to pay Plaintiff for the sales thereof, is at the

14

center of the allegations in Plaintiff's lawsuit.  The breach of contract, breach of implied contract, conversion, promissory estoppel, unjust enrichment, and tortious interference claims each turn in large part on the failure of Defendants to pay Plaintiff for 25 Pain Away Lasers that were distributed in New York.  FAC ¶ 80.  Meetings between Super, Geller, and Plaintiff to discuss that distribution thus satisfy the requisite "significance of the meeting to the claim and the relationship between the meeting and the wrongful act" to confer specific personal jurisdiction.  *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 697 (S.D.N.Y. 2018).  *See Aritomo v. Rhee*, 2022 WL 17156554, at *7 (S.D.N.Y. Nov. 22, 2022) ("while only one New York meeting occurred, it is sufficient to establish jurisdiction under § 302(a)(1)."); *Topnotch Tennis Tours, LLC v. Glob. Tennis Connections Ltd.*, 2014 WL 6389587, at *5 (E.D.N.Y. Nov. 14, 2014) (finding jurisdiction based on a "meeting and negotiations in New York" when the meeting "substantially advanced the business relationship and formation of the contract at issue.").  Jurisdiction is thus proper over the individual defendants on this basis.[7]

---

[7] Jurisdiction might be appropriate too because Super and Geller, though non-signatories to the MOU containing the forum selection clause, "may still be bound when they are found to be alter-egos or successors-in-interest of the signatory."  *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *14 (S.D.N.Y. Mar. 10, 2021).  "In each case, the Court must examine the relevant allegations and evidence with respect to the individual the plaintiff seeks to hale into court" in order to make that determination."  *Id.*  "Under New York law, a court may pierce the corporate veil for jurisdictional purposes when 'the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor.'"  *Koh v. Koo*, 2023 WL 5352786, at *2 (S.D.N.Y. Aug. 21, 2023) (quoting *In re Vebeliunas*, 332 F.3d 85, 91-92 (2d Cir. 2003)).  Plaintiff alleges that Super is the registered agent of Supplies Plus MI, that Geller is general counsel thereof, and identifies only Super and Geller as individuals holding a membership interest in the company.  FAC ¶¶ 19, 36, 40–41.  Super and Geller are alleged to have "approached" Smart Recovery with the business proposal for distribution of Smart Recovery's DME, and are the only persons identified that participated in the negotiation of the resulting MOU.  *Id.* ¶¶ 54–65.  They are the sole signatories of the MOU, and are each identified as a "Principal" of Supplies Plus MI.  Dkt. No. 32-1 at 4.  Moreover, Plaintiff alleges that Super and Geller "used funds" from sales of proceeds generated through the MOU to make personal purchases unrelated to the business and attempted to "hide" the money derived therefrom.  FAC ¶¶ 98–100.  The Court need not, however, rely on this basis for personal jurisdiction because

15

Defendant argues that Plaintiff has failed to establish personal jurisdiction over Super and Geller because their alleged conduct in New York was on behalf of Supplies Plus-FL, but as they acknowledge, that is a defense to general, not specific, personal jurisdiction.  Dkt. No. 40 at 17 (citing *Beskrone v. Berlin*, 656 F. Supp. 3d 496, 509 (S.D.N.Y. 2023) ("defendant 'does not subject himself, individually, to the C.P.L.R. 301 jurisdiction of our courts, however, unless he is doing business in our State individually.'" (quoting *Laufer v. Ostow*, 434 N.E.2d 692, 696 (N.Y. 1982)))); Dkt. No. 59 at 2.  C.P.L.R. § 302(a), by contrast, "does not shield from personal jurisdiction a defendant who engages in conduct in New York in his fiduciary capacity."  *N. Fork Partners Inv. Holdings, LLC v. Bracken*, 2020 WL 6899486, at *10 (S.D.N.Y. Nov. 23, 2020). Rather, "to establish jurisdiction over an individual for conduct performed in a corporate capacity, a plaintiff need only establish that the principal engaged in purposeful activities in the forum state on behalf of the corporation, with the corporation's knowledge and consent, and subject to the corporation's control."  *Id.* (quoting *Wallace Church & Co. Inc. v. Wyattzier, LLC*, 2020 WL 4369850, at *6 (S.D.N.Y. July 30, 2020)).

The Court also has specific personal jurisdiction under C.P.R.L. § 302(a) over Supplies Plus-FL.  The FAC alleges that Smart Recovery provided Supplies Plus-FL with twenty-five lasers specifically for their distribution in New York.  FAC ¶ 80.  As alleged, the entire purpose of the relationship between Plaintiff and Supplies Plus-FL was to distribute Smarty Recovery's DME in the New York market.  *Id.* ¶ 58 ("Mr. Geller and Dr. Super advised that insurance claims for the use of Smart Recovery's DME in New York would be handled by Supplies Plus-FL.").  And Plaintiff alleges that sales did occur in New York as a result, for which Plaintiff

---

personal jurisdiction is established over Super and Geller on the basis that they transacted business in New York under C.P.R.L. § 301(a).

was never compensated.  *See* FAC ¶ 93 ("billings to personal injury carriers" in New York "totaled approximately $150,000.00 and collections were $5,500.00."); *id.* ¶ 84 (Smart Recovery is "yet to receive any payment" for the DME shipped to New York).  Accordingly, Plaintiff has alleged that Supplies Plus-FL both "transacted business within the state" and the claims "arise from that business activity."  *Sole Resort, S.A.*, 450 F.3d at 103.

Finally, as to Supplies Plus NY-FL, the complaint does not contain sufficient allegations to establish personal jurisdiction.  The entirety of the allegations as they relate to Supplies Plus NY-FL is that Dr. Super directed that the New York-bound DME be sent to a Florida address for a business that was a "Florida company doing business in New York."  FAC ¶ 120.  That description, Plaintiff alleges, only matches Supplies Plus NY-FL, which is a Florida LLC that "was registered to do business in New York as a foreign limited liability company."  *Id.* ¶¶ 28, 33.  That allegation alone does not, for several reasons, establish personal jurisdiction under New York law.  First, the allegation is purely conjectural, and would establish that the Supplies Plus NY-FL transacted business in New York only if the Court were to infer that (1) Smart Recovery actually sent the DME to the address in Florida as requested (which they do not allege), (2) that the company to which that message referred was Supplies Plus NY-FL and not Supplies Plus-FL or any other company, and (3) that the goods that were sent to Florida were sold in New York.  While the Court must draw inferences in the Plaintiff's favor, it will not invent factual allegations where they have not been alleged.  *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

Second, the allegations as to Supplies Plus NY-FL are contradicted by other allegations in the FAC.  For example, the text message to which the FAC refers that contains the reference to a "Florida company doing business in New York" was sent on December 7, 2022.  FAC ¶ 6.

17

However, Plaintiff invoiced Supplies Plus-FL for the only DME it has alleged was shipped to New York in July 2022, refuting the allegation that it sent that same DME to Florida at a later date. *Id.* ¶ 82. And the FAC explains that these were "provided to Dr. Rausch," who was located in New York, "to distribute on behalf of Supplies Plus-FL." *Id.* ¶ 80. It clearly was Rausch who received the DME, as he ultimately returned six of them to Plaintiff. *Id.* ¶ 104. In sum, the allegations contain almost no information about Supplies Plus NY-FL, and to the contrary affirmatively plead that it was Supplies Plus-FL that handled the New York bound DME. Where the sparse allegations as to Supplies Plus NY-FL are contradicted by the majority of the complaint, the Court need not accept them as true. *Koutsoudakis & Iakovou Law Grp. PLLC v. Osman*, 2023 WL 5232622, at *6 (S.D.N.Y. Aug. 14, 2023).

Accordingly, under the New York long arm statute, Plaintiff has established personal jurisdiction over the Defendants other than Supplies Plus NY-FL. The motion to dismiss for lack of personal jurisdiction is therefore granted as to Supplies Plus NY-FL, and the Court will not address the claims against it further.

### B.      Constitutional Due Process

As the Second Circuit has suggested, it is the rare case where the exercise of personal jurisdiction pursuant to C.P.L.R. § 302(a)(1) is nevertheless unconstitutional pursuant to the Due Process Clause. *See, e.g., Spetner v. Pal. Inv. Bank*, 70 F.4th 632, 645 (2d Cir. 2023) ("Historically, when we have found § 302(a)'s requirements satisfied based on an agent's contacts with the forum, we have not suggested that due process requires something more than New York law."); *Licci*, 732 F.3d at 170 (noting that while § 302(a)(1) is "not coextensive" with the due process clause, a case would be "rare" in which contacts satisfy the statute yet fail to comport with due process). Nevertheless, the Court must independently ensure that the constitutional requirements are satisfied.

18

The due process analysis proceeds in two steps. First, "[t]o exercise specific personal jurisdiction over a corporate defendant that is not incorporated in or primarily doing business in the State, a court must first determine that a corporate defendant's in-state acts reflect its 'purposeful availment' of opportunities within the State, and that the asserted claims arise out of or relate to its contacts with the State." *Lelchook v. Société Générale de Banque au Liban S.A.L.*, 147 F.4th 226, 239 (2d Cir. 2025) (quoting *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021)). Second, the court must find that "[t]he exercise of jurisdiction in the State as to the related claims over the defendant [is] 'reasonable'—that is, consistent with 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Licci*, 732 F.3d at 169–70, 174). These requirements are both satisfied here.

First, for the same reasons that the Court determined that Geller, Super, and Supplies Plus-FL transacted business in New York, it is clear that they have purposefully availed themselves of New York. A founding premise of those Defendants' relationship with Plaintiff was to sell Smart Recovery's DME in New York. As alleged, Smart Recovery supplied the DME to Defendants, who did distribute at least some of those devices in New York but did not pay Plaintiff. And the various claims that Smart Recovery has brought in this proceeding all arise out of the breakdown in that relationship. *See Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 279 (2d Cir. 2024) ("[f]or the same reasons that [the defendant's] engagement with New York satisfied § 302(a)(1), it also satisfied the minimum contacts requirement.").

Second, the exercise of jurisdiction is reasonable. In this analysis, the Court considers the burden on the Defendants of exercising jurisdiction, the interests of the forum state in adjudicating the case, the Plaintiff's interest, the interest of the interstate judicial system, and the shared interests of the states. *Peterson v. Bank Markazi*, 121 F.4th 983, 1006 (2d Cir. 2024).

"When the minimum contacts requirement has been satisfied, the defendant 'must present a compelling case that the presence of some other consideration would render jurisdiction unreasonable.'" *Id.* (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)).  Defendants have presented no such argument.  Moreover, the considerations as a whole support this Court's exercise of jurisdiction.  As to the burden on the Defendants, that is eased by "the conveniences of modern communication and transportation." *Licci*, 732 F.3d at 174 (quoting *Metro. Life*, 84 F.3d at 574).  Because some of the alleged sales for which there was no payment took place in New York, there is an interest of the forum state in resolving the dispute here.  The fact that the dispute with Supplies Plus-MI selected a New York forum also counsels in favor of the Court hearing the claims collectively here where there is sufficient personal jurisdiction over Supplies Plus-MI.  It is also clear from the FAC that Super and Geller negotiated and signed the MOU, such that the forum selection clause therein gave the defendants "fair warning of the possibility of being subject to the jurisdiction of New York." *D.H. Blair*, 462 F.3d at 105; *cf. Fasano v. Li*, 47 F.4th 91, 104 (2d Cir. 2022) (in the context of a motion to dismiss for *forum non conveniens*, the fact that a non-signatory was involved in the contract and were wholly or partially owned by the signatory to the contract made it "reasonably foreseeable . . . that they would be subject to the . . . Forum Selection Clause.")  Accordingly, the Court concludes that it is constitutionally appropriate to exercise personal jurisdiction over Defendants.

## II.     Defendants' Motion to Dismiss Under Rule 12(b)(6)

### A.     Breach of Contract Claim Against Supplies Plus-MI

In Count I, Plaintiff alleges that Supplies Plus-MI breached the MOU by (1) failing to make any payments contributing to the invoiced amount for Smart Recovery's DME; (2) failing to provide access to the billing and collections tracking system as contemplated by the MOU; (3) concealing information and data from Smart Recovery regarding the use of Smart Recovery's

DME devices; (4) using third parties with which Supplies Plus-MI's principal members, Geller and Super, "have a material and financial interest to control the billing and collection practices implemented in furtherance of the MOU for the benefit of one or more defendants and/or third parties"; and (5) "[f]ailing to take steps to mitigate damages and/or cure breaches of the MOU." FAC ¶ 114.  The MOU states that it "shall be governed and construed in accordance with the laws of the State of Michigan." Dkt. No. 32-1 ¶ 3(k).

To plead a claim for breach of contract under Michigan law, a plaintiff must allege "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am., NA v. First Am. Title Ins. Co.*, 878 N.W.2d 816, 829 (Mich. 2016); *see El-Khalil v. Oakwood Healthcare, Inc.*, 934 N.W.2d 665, 672 (Mich. 2019); *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014); *Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC*, 485 F. Supp. 3d 885, 891 (E.D. Mich. 2020).  "'[A] showing of damages is a necessary element in a claim for breach of contract." *Aron Alan, LLC v. Tanfran, Inc.*, 2006 WL 305971, at *5 (W.D. Mich. Feb. 8, 2006), *aff'd*, 240 F. App'x 678 (6th Cir. 2007) (quoting *Borlack v. Mackler Bros., Inc.,* 1996 WL 33360419, at *3 (Mich. Ct. App. Aug.20, 1996)).

Supplies Plus-MI argues that Plaintiff has failed to plead an essential element of its claim because it "disclaims any right it may have had to collect based on the percentage of collections as contemplated by the MOU . . . and seeks only to recover the invoiced amount for [] DME, plus other damages as set forth in the prayer for relief below." Dkt. No. 40 at 22 (citing FAC ¶ 112); *see* FAC ¶ 72 n. 1 (explaining that "[s]ince the execution of the MOU, Smart Recovery has determined that sharing in any such collection proceeds could be viewed as an impermissible fee split under applicable law, and is therefore only pursing the wholesale cost of the units it sold

under the MOU."). Supplies Plus-MI argues that disclaiming the damages that are the direct, natural and proximate result of the breach "is tantamount to a purposeful election to decline pleading an essential element of any breach of contract action." Dkt. No. 40 at 22 (internal quotation marks omitted). Instead of the payment due under the contract, Plaintiff seeks a damages award representing the invoiced price for the DME that Smart Recovery shipped pursuant to the July 12, 2022 MOU. FAC ¶ 112. That totals $442,188.00. *Id.* ¶ 82.

It is true, as Defendants explain, that "[i]n a breach of contract case, the plaintiff must establish a causal link between the asserted breach of contract and the claimed damages." *Gorman v. Am. Honda Motor Co., Inc.*, 839 N.W.2d 223, 227 (Mich. App. 2013); *Endoscopy Corp. of Am. v. Kenaan*, 2023 WL 2439487, at *11 (Mich. App. Mar. 9, 2023) (same).[8] It is true too that a defendant is "only liable for damages that are the 'direct, natural, and proximate result of the breach.'" *Id.* (quoting *Alan Custom Homes, Inc. v. Krol*, 667 N.W.2d 379, 383 (Mich. App. May 8, 2003)). Defendants assert that because Plaintiff's claimed damages do not mirror the compensation they contracted to receive, it has not established that requisite link. That is a misunderstanding of the rule that breach and damages be connected. The causation requirement prevents a plaintiff from winning a damages award where a plaintiff has shown no connection between those damages and the breach, where there is no evidence as to what damages occurred, or where there are multiple explanations for the damages, any one of which is as likely as breach. *See Endoscopy Corp.*, 2023 WL 2439487, at *11 (explaining that "plaintiff's first amended complaint does not allege any form of damages resulting from a breach of the contract's

---

[8] Under Michigan Law, "[u]npublished opinions of the Court of Appeals are not binding" on a subsequent Court of Appeals case, "but may be considered for their persuasive value." *Black v. Cook*, 11 N.W.3d 563, 573 n.4 (Mich. App. 2023) (considering an unpublished opinion in support of legal proposition).

nondisparagement agreement"); *Gorman*, 839 N.W.2d at 227 (plaintiffs raised "only speculation and conjecture that defects disclosed to the defendants during the warranty period went unrepaired," resulting in damages); *Alan Custom Homes*, 667 N.W.2d at 383 (reviewing the trial court's decision that "plaintiff did not cause defendants' damages . . . because plaintiff would have completed the project had defendants not locked plaintiff out, and defendants would have had to pay plaintiff the cost of completion."). Defendants point to no source of law indicating that a Plaintiff can recover on a breach of contract theory *only* where they request damages identical to the value and form of payment contemplated in the contract itself.

At this stage, Plaintiff has adequately stated a claim for breach of contract, including that the breach resulted in damages. Under Michigan law, damages in contract actions can include both expectation damages and reliance damages. Expectation damages may not be available where a plaintiff disclaims the promise contained within the contract itself, as these damages are "designed to make the plaintiff whole." *Frank W. Lynch & Co. v. Flex Technologies, Inc.*, 624 N.W.2d 180, 184 n.4 (Mich. 2001). Expectation damages are "measured by the value of the benefits the aggrieved party would have received had the contract not been breached." *Carr Farm, LLC v. Dosh*, 2025 WL 2649274, at *5 (Mich. App. Sept. 15, 2025) (citing *Ferguson v. Pioneer State Mut. Ins. Co.*, 731 N.W.2d 94, 99 (Mich. App. 2006)). "The standard is objective; damages that the breaching party either knew or should reasonably have known would occur are recoverable." *Ric-Man Construction, Inc. v. Neyer, Tiseo, & Hindo Ltd.*, 2017 WL 188049, at *13 (Mich. App. Jan. 17, 2017) (citing *Lawrence v. Will Darrah & Assocs.,* 516 N.W.2d 43, 48 (Mich. 1994)).

However, where expectation damages are not available or are not requested, "unless there is some artificial rule of law which has taken the place of natural justice in relation to the

23

measure of damages, it would seem to be quite clear that the claimant ought at least to be made whole for his losses and expenditures." *Earl Dubey & Sons, Inc. v. Macomb Concrete Corp.*, 266 N.W.2d 152, 160 (Mich. 1978) (quoting *United States v. Behan*, 110 U.S. 338, 344 (1884)); *see Nartron Corp. v. Tuthill Corp.*, 2006 WL 1494992, at *4 (E.D. Mich. May 25, 2006) ("If Tuthill breached the [contract], Nartron is entitled to reliance damages regardless of whether it issued any invoices for such damages and regardless of whether Tuthill issued any purchase orders."); *Encore Big Beaver LLC v. Uncle Julio's of Fla., Inc.*, 2021 WL 5413889, at *3 (E.D. Mich. Aug. 30, 2021) ("The remedies available under Michigan law include both expectation and reliance based damages."). Such reliance damages are "based on the reasonable expenses incurred attempting to perform the contract." *Early Dubey & Sons*, 266 N.W.2d at 160; *see also* Restatement (Second) of Contracts § 349 ("the injured party has a right to damages based on his reliance interest, including expenditures made in preparation for performance or in performance"); Mich. M. Civ. Jury Instructions § 142.33 ("If you do not award damages . . . that would put [the party] in as good as a position had the contract been performed, you may still award damages that put [him] in the same position as if the contract had never been made."). "So long as the expenses Plaintiff incurred are reasonably foreseeable, reliance damages put the Plaintiff back in the position it would be in had the contract never existed." *Touch-N-Buy, Ltd. P'ship v. GiroCheck Fin., Inc.*, 2018 WL 703436, at *16 (E.D. Mich. Feb. 5, 2018).

Defendants do not claim that they performed under the MOU. Under that agreement, Plaintiff promised to provide DME exclusively to Supplies Plus-MI for the Michigan and New York markets, and in return Defendants promised to bill and collect fees, pay Smart Recovery 50% of the Net Collections, and provide Smart Recovery with a Login link to track sales. Dkt. No. 32-1 at 1–2. In their motion to dismiss, Defendants do not contest that they have breached

their half of the bargain, in that they did not (1) provide a Login link, or (2) pay Smart Recovery anything.  Nor do they contest that Plaintiff fulfilled its half of the bargain.  As a result of that breach, Plaintiff has evidently suffered monetary damage—it sent goods for which it received no payment.  Plaintiff now seeks damages from that breach that are distinct from the payment it was entitled under the contract.  The fact that Plaintiff has disclaimed expectation damages thus does not deprive it of any breach of contract remedy.  Rather, reliance damages are available to put Plaintiff in the same position it would have been in had it never entered into the contract at all—a time at which it had possession of the DME that it provided to Defendants.[9]

Defendants' motion to dismiss Count I is denied.

### B.      Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff alleges in Count VI that Supplies Plus-MI breached the duty of good faith and fair dealing implied in every contract under Michigan law by "*inter alia*, utilizing businesses in which defendants Mr. Geller and Dr. Super have an ownership, financial, or beneficial interest to process healthcare provider claims for treatment rendered to their patients using Smart Recovery's PainAway Home Care Laser 2.0 and sam Pro 2.0 DME devices in a manner to benefit Defendants at the expense of Smart Recovery."  FAC ¶ 145.

"Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing."  *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 279–80 (Mich. Ct. App. 2003); *see Rolfe v. Baker College*, 2019 WL 2016026, at *6 (Mich. Ct. App. 2019)

---

[9] Defendants' motion does not require the Court to express an opinion whether Plaintiff is entitled to recovery of the invoiced amount of the DME in the event of a breach and therefore the Court expresses no opinion on that issue.  In addition, Plaintiff has alleged that the payment methodology contemplated in the MOU "could be viewed as an impermissible fee split under applicable law."  FAC ¶ 72 n.1.  Neither party elaborated on that point.  Under Michigan law, "[i]f any part of such consideration is illegal, the entire consideration is void."  *Kukla v. Perry*, 105 N.W.2d 176, 182 (Mich. 1960).  Because neither party has affirmatively suggested the consideration is inf act illegal, the Court has no opportunity to consider this point at this juncture.

(declining to recognize a cause of action for breach of an implied covenant of good faith and fair dealing between parties to a contract); *Acrisure, LLC v. Hudak*, 618 F. Supp. 3d 642, 648 (W.D. Mich. 2022) ("Michigan law does not recognize a separate cause of action for breach of this implied covenant").[10]  Rather, the obligation of good faith "is a principle by which contractual obligations . . . are to be measured and judged." *Gorman v. American Honda Motor Co., Inc.* 839 N.W.2d 223, 235 (Mich. App. 2013).  "[T]he covenant of good faith and fair dealing is an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Kircher v. Boyne USA, Inc.*, 19 N.W.3d 914, 918 (Mich. App.  2023) (quoting *Hammond v. United of Oakland, Inc.*, 483 N.W.2d 652, 655 (Mich. App. 1992)).  Under that principle, "when a contract confers discretion on a party, a breach-of-contract action will lie for an alleged bad-faith exercise of that discretion."  *Kircher*, 19 N.W.3d at 919; *see Woods v. City of Saginaw*, 2019 WL 5197637, at *3 (Mich. App. 2019) ("[t]he implied promises requires a party to exercise its discretion 'honestly and in good faith'" (quoting *Ferrell v. Vic Tanny Int'l Inc.*, 357 N.W.2d 669, 672 (Mich. App. 1984))).

Because Michigan law is clear that a claim that a party breached the implied covenant of

---

[10]  Michigan law, the law which the parties agreed would govern their contract, also governs the application of the doctrine of good faith and fair dealing.  *See Tireme Energy Holdings, Inc. v. Innogy Renewable US LLC*, 706 F. Supp. 3d 409, 431 (S.D.N.Y. Dec. 14, 2023) ("Under New York choice-of-law rules for cases involving a contract with a choice-of-law clause . . . the court 'applies the law selected in the contract as long as the state selected has sufficient contacts with the transaction.'") (quoting *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000)); *2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Financial Life Assur. Co.*, 96 F. Supp.3d 182, (S.D.N.Y. 2015).  Under both the law of New York and the law of Michigan, a claim for breach of the covenant of good faith and fair dealing sounds in contract.  *See Gorman v. American Honda Motor Co., Inc.* 839 N.W.2d 223, 235 (Mich. App. 2013) (obligation of good faith "is a principle by which contractual obligations . . . are to be measured and judged.").

good faith and fair dealing is not an independent claim, Count VI of the Complaint is dismissed with prejudice. The dismissal of the independent claim does not prevent Plaintiff from relying on the doctrine in relation to its breach of contract claim. *See Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1108 (6th Cir. 2012) ("The district court also properly dismissed the . . . claim for breach of an implied covenant of good faith and fair dealing because 'Michigan law does not recognize a claim for breach of an implied covenant of good faith and fair dealing.'" (quoting *Bell Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 279 (Mich. App. 2003))).

### C.    Quasi Contract Claims

Plaintiff next alleges several quasi contract claims against the various Defendants. In Count II, Plaintiff alleges that Supplies Plus-FL breached an implied-in fact contract with Plaintiff. In Count IV, it pleads a promissory estoppel claim against Supplies Plus-MI, Geller, and Super. And in Count V, it pleads an unjust enrichment claim against all Defendants.

#### 1.    Quasi Contract Claims Against Supplies Plus-MI

In Count IV, Plaintiff alleges, in the alternative to Count I, that Supplies Plus-MI "made promises to Smart Recovery concerning the manner in which the terms of the MOU would be implemented to ensure that Smart Recovery knew: (1) where its DME devices were being used, the frequency and purpose of use by the healthcare providers in Michigan and New York, and (2) the amount of receivables due health care providers for treating their patients with the,"[11] and that Smart Recovery relied on those promises in providing their DME to Supplies Plus-MI. FAC ¶¶ 130, 132. In Count V, Plaintiff also alleges that Supplies Plus-MI was unjustly enriched by its "unauthorized use, distribution, and retention of the PainAway Home Care Laser 2.0 and sam

---

[11] The language in the amended complaint is cut off. The Court assumes that Plaintiff intended the clause to end "Smart Recovery DME."

Pro 2.0 DME devices as well as funds, accounts receivable, and other billing and collection associated with those devices." *Id.* ¶ 136.

"Under applicable Michigan law, in the absence of a valid *contract*, a court may enforce a *promise* between the parties so long as (1) the parties made a promise; (2) the promisee acted in reliance; (3) the promisor 'should reasonably have expected to induce' the promisee's reliance; and (4) enforcing the promise avoids injustice." *P.R.A. Co. v. Arglass Yamamura SE, LLC*, 768 F. Supp. 3d 862, 871 (E.D. Mich. 2024) (quoting *Seither & Cherry Quad Cities, Inc. v. Oakland Automation, LLC*, 2024 WL 4507355, at *5 (E.D. Mich. Oct. 16, 2024)).  However, "equitable promissory estoppel and unjust enrichment claims cannot lie in the presence of a valid contract between the same parties governing the same subject matter." *P.R.A. Co. v. Arglass Yamamura SE, LLC*, 768 F. Supp. 3d 862, 872 (E.D. Mich. 2024); *see, e.g., Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 903 (2006) ("a contract will be implied only if there is no express contract governing the same subject matter"); *Able Demolition v. Pontiac*, 275 Mich.App. 577, 739 N.W.2d 696, 702, n. 4 (2007) (denying plaintiff's unjust enrichment, quantum meruit, and promissory estoppel claims because a valid contract governed the relevant relationship); *Lynch v. Sease*, 244 F. App'x 736, 739 (6th Cir. 2007) (noting "a plaintiff cannot recover under both" breach of contract and promissory estoppel for "the same promise").

Although a plaintiff is permitted to "plead equitable quasi contract claims—like promissory estoppel and unjust enrichment—in the alternative to a breach of contract claims, Fed. R. Civ. P. 8(a)(3), this alternative pleading is available only when contract validity is unknown or unclear." *P.R.A.*, 786 F. Supp. 3d at 872.  "A plaintiff can only plead breach of contract and implied contract claims in the alternative if there is doubt as to the existence of a contract." *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 824, 834 (E.D. Mich.

2014); *see, e.g., Ford Motor Co. v. Ghreiwati Auto*, 945 F. Supp. 2d 851, 870 (E.D. Mich. 2013) (collecting cases and noting a plaintiff's pleading of breach of contract "will preclude unjust enrichment or promissory estoppel claims" in "some instances").  "When a plaintiff pleads a quasi-contract claim in the alternative to a breach of contract claim, and the defendant admits the contract in question is valid, a plaintiff's corresponding quasi-contract claims must be dismissed."  *P.R.A.*, 782 F. Supp. 3d at 872; *see Lynch*, 244 F. App'x at 739 ("Once it is established, either by an admission of a party or by a judicial finding, that there is in fact an enforceable contract between the parties, and therefore consideration exists, then a party may no longer recover under the theory of promissory estoppel." (quoting 28 Am. Jur. 2d Estoppel and Waiver § 57 (2000))); *Advanced Plastics Corp. v. White Consol. Indus., Inc.*, 828 F. Supp. 484, 491 (E.D. Mich. 1993), *aff'd*, 47 F.3d 1167 (6th Cir. 1995) (noting a plaintiff cannot proceed with a "quantum meruit or implied contract" claim if the "parties admit that a contract exists"); *Turnbull v. Frankenmuth Insurance Co.*, 2025 WL 958161, at \*6 n.1 (E.D. Mich. Mar. 31, 2025).

Here, the MOU between Smart Recovery and Supplies Plus-MI is a contract "between the same parties governing the same subject matter."  *P.R.A.*, 768 F. Supp. 3d at 872.  Moreover, neither Plaintiff nor Defendant contests that the MOU is a valid contract as between the parties. *See* Dkt. No. 40 at 24 ("Here, it is pellucid that the MOU is an express contract that concerns the pertinent subject matter."); Dkt. No. 49 at 7–9 (argument in support of breach of contract claim predicated on a valid contract).  Accordingly, Plaintiff's causes of action in quasi contract are dismissed with prejudice as against Supplies Plus-MI.

### 2.    Implied in Fact Contract Claims Against the Remaining Defendants

Defendants contend in their motion to dismiss that the existence of the MOU defeats not just the quasi contract claims as against Supplies Plus-MI, but as against all of the Defendants.

29

Neither Geller of Super (in their individual capacities), nor Supplies Plus-FL are parties to the MOU.  Plaintiff's theory of recovery in quasi contract against these parties, however, turns on the exact same allegations that underlie its breach of contract action against Supplies Plus-MI.

Under Michigan law,[12] whether an express contract will preclude a quasi-contract action against a non-party to that contract depends on the circumstances of the case.  The general rule is that such actions are precluded only where the express contract is between the same parties and with respect to the same subject matter.  "Generally, an implied contract may not be found if there is an express contract *between the same parties* on the same subject matter."  *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 903 (Mich. App. 2006) (quoting 42 C.J.S. Implied and Constructive Contracts § 34) (emphasis in original); *see DDL Logistics LLC v. Metalsa SA de CV*, 2022 WL 71778, at *4 (E.D. Mich. Jan. 5, 2022); *KSR Int'l Co. v. Delphi Auto Sys. LLC*, 523 F. App'x 357, 363 (6th Cir. 2013).  Where one party "was not a party to any of these express contracts," "[b]ecause there was no express contracts *between the same parties* on the same subject matter," the argument that the express contract precludes an implied contract between those parties "must fail."  *Morris Pumps*, 729 N.W.2d at 904 (emphasis in original). *See also Lipton Law Ctr., PC c. Andrus Wagstaff, PC*, 2024 WL 1776331, at *7 (E.D. Mich. Apr. 24, 2024) (finding an implied contract precluded where there is "an express agreement between the parties" on the same subject).

---

[12] Under New York law, where "[t]he parties' briefs assume" that a certain body of law controls, "such implied consent is sufficient to establish choice of law."  *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000); *see also Pacific Indem. Co. v. Kiton Corp.*, 2022 WL 4237092, at *2 (S.D.N.Y. Sept. 14, 2022).  Here, both parties brief the question of implied contract under Michigan law.  See Dkt. No. 40 at 22–24; Dkt. No. 49 at 9–12.  The Court will apply Michigan law in deciding Defendants' motion to dismiss the implied contract claims.

However, more recently, the Michigan Court of Appeals has explained that the general requirement that both the parties and subject matter be the same as elaborated in *Morris Pumps* "is not an absolute requirement." *Landstar Express Am., Inc. v. Nexteer Automotive Corp.*, 900 N.W.2d 650, 656 (Mich. App. 2017). The court explained that "the *Morris Pumps* Court's reliance on the fact that there was no contract between the plaintiff and defendant . . . alone is not controlling." *Id.* In *Landstar* the Michigan Court of Appeals continued that because "defendants here were parties to express contracts related to the same subject matter," even though those contracts were not with the plaintiff but with a third party, it was clear that the third party (and not defendants) was the one responsible for breach. *Id.* at 657. Accordingly, the court found that the plaintiff could not "demonstrate how any benefit received by the defendants was unjust," because "the benefit defendants received . . . was nothing more than what all the parties contemplated." *Id.* at 658. "While plaintiff certainly was deprived of the money it was due for fulfilling its obligation to ship the parts, that duty to pay fell to [the third party], not defendants. To rule that defendants now should pay for [the third party's] debts would work an injustice against defendants, who had a contractual right to have [that third party] pay for these costs." *Id.*

To address the interplay between *Morris Pumps* and *Landstar* courts have determined that the latter does not "explicitly limit[]" the former, but rather that it "highlight[s] the key animating factor in deciding whether to imply a contract: whether there is a contract governing the same subject matter, the existence of which is 'sufficient to preclude the imposition of any implied contract' contrary to the express contracts." *PAL Environ. Safety Corp. v. N. Am. Dismantling Corp.*, 2021 WL 634633, at *3 (E.D. Mich. Feb. 18, 2021) (quoting *Landstar*, 900 N.W.2d at 657); *see DDLI Logistics LLC v. Metalsa SA de CV*, 2022 WL 71778, at *5 (E.D. Mich. Jan. 5, 2022); *Oldnar Corp. v. Panasonic Corp. of N. Am.*, 766 F. App'x 255, 266 (6th Cir.

31

2019); *Roche Diagnostics Corp. v. Shaya*, 427 F. Supp. 3d 905, 926 (E.D. Mich. 2019); *Reyes-Trujillo v. Four Star Greenhouse, Inc.*, 513 F. Supp. 3d 761, 799 (E.D. Mich. 2021).

Accordingly, Plaintiff's quasi-contract claims against the remaining defendants are not, as Defendants argue, necessarily precluded as a matter of law due to the existence of the MOU between Smart Recovery and Supplies Plus-MI.  The inquiry turns on the specific facts.  The Court therefore considers whether Plaintiff has stated a claim under each alleged quasi-contract theory against the different Defendants.  "There are two kinds of implied contracts; one implied in fact and the other implied in law.  The first does not exist, unless the minds of the parties meet, by reason of words or conduct.  The second is quasi or constructive, and does not require a meeting of the minds, but is imposed by fiction of law, to enable justice to be accomplished, even in a case where no contract was intended." *Chopra v. Physicians Med. Ctr., LLC*, 2018 WL 1456206, at *5 (E.D. Mich. Mar. 23, 2018) (quoting *Cascaden v. Magryta*, 225 N.W. 511, 512 (Mich. 1929)).  Plaintiff alleges theories of recovery under both an implied in fact contract and quasi-contract against the various Defendants.  The Court addresses them in turn.

### a.    Breach of Implied Contract with Supplies Plus-FL

Count II alleges that "Supplies Plus-FL . . . through their authorized shareholders/members Mr. Geller and Dr. Super, indicated by dealings and circumstances surrounding the relationship, express representations, and course of conduct that it would pay the invoiced costs for Smart Recovery's DME installments over a period of time by providing Smart Recovery with fifty percent (50%) of the net collections associated with the rental of PainAway Home Care Laser 2.0 and sam Pro 2.0's to Michigan and New York-based healthcare providers." FAC ¶ 118.  Those Defendants received the lasers but failed to pay the invoices sent.  *Id.* ¶¶ 119– 21.  As a result, "Smart Recovery suffered and continues to suffer damages of no less than

$442,188.00 based on the failure to pay the invoiced price for Smart Recovery's DME." *Id.* ¶ 122.

"Courts recognize implied contracts where parties assume obligations by their conduct." *Williams v. Unit Handling Sys. Div. of Litton Sys., Inc.*, 449 N.W.2d 669, 670 (Mich. 1989). It "is to be gathered by implication or proper deduction from the conduct of the parties, language used, or things done by them, or other pertinent circumstances attending the transaction." *Chopra*, 2018 WL 1456206, at *6 (quoting *Tustin Elevator & Lumber Co. v. Ryno*, 129 N.W.2d 409, 414 (Mich. 1964)). Where such an implied contract can be established, to state a claim for breach of that implied contract the elements are "the same three elements necessary to state an express [breach of] contract claim." *Polkowski v. Jack Doheny Companies, Inc.*, 2025 WL 3079358, at *10 (E.D. Mich. Nov. 4, 2025). That is, "[a] plaintiff must allege facts sufficient to show: '(1) there was a contract, (2) the other party breached the contract, and (3) this breach resulted in damages to the party claiming breach.'" *Id.* (quoting *Johnson v. Westfield Ins. Co.*, 2019 WL 3456808, at *2 (E.D. Mich. July 31, 2019)).

In support of its implied contract claim, Plaintiff alleges that Smart Recovery "shipped and invoiced certain DME" to a Florida address that is "the registered address of Supplies Plus-FL Inc. and/or Supplies Plus NY-FL LLC." FAC ¶ 6. Geller and Super "advised" Plaintiff "that insurance claims for the use of Smart Recovery's DME in New York would be handled by Supplies Plus-FL." *Id.* ¶ 58. It was Supplies Plus-FL that would be provided "the necessary patient and supply information for billing purposes," and that would actually "bill for providing Smart Recovery's DME as the supplier of record, which by law requires Supplies Plus-FL to 'acquire' the DME is dispenses." *Id.* ¶ 62. Plaintiff alleges also that it shipped 25 PainAway

lasers to Supplies Plus-FL, for which it invoiced the company $123,125.00.  *Id.* ¶¶ 80–82.[13]

Regardless, Plaintiff seeks the full $442,188.00 against Supplies Plus-FL.  *Id.* ¶ 122.  Plaintiff

alleges too that subcontractors for Supplies Plus-FL failed to provide billing and collection

reports following inquiries from Plaintiff.  *Id.* ¶ 89.  Plaintiff's allegations establish that its

understanding that Supplies Plus-FL would handle matters related to New York distribution

pre-dated its signing of the MOU.  *Id.* ¶ 56–58 (explaining that in June 2022, Super and Geller

"advised that insurance claims for the use of Smart Recovery's DME in New York would be

handled by Supplies Plus-FL.")

The implied contract claim against Supplies Plus-FL turns on the alleged failure of that

company to pay Plaintiff for the DME it provided to Supplies Plus-MI pursuant to the MOU.  As

alleged, it is clear that the duty to make the payments that Plaintiff seeks "fell to [Supplies

Plus-MI], not defendants."  *Landstar*, 900 N.W.2d at 658.  Plaintiff points to no obligation

assumed by Supplies Plus-FL that is distinct from those promises made by Supplies Plus-MI.  To

the contrary, Plaintiff is explicit that it seeks the exact same damages for the same failure to pay

in the implied contract claim as it seeks in the breach of contract claim against Supplies Plus-MI.

That is because the allegations clarify that Supplies Plus-FL would essentially discharge the

responsibilities of Supplies Plus-MI with respect to the New York facing aspect of the DME

delivery, billing, and payment.  Plaintiff does not allege that Supplies Plus-FL undertook any

action that Supplies Plus-MI had not contractually agreed to perform.  Indeed, it remained under

the MOU the responsibility of Supplies Plus-MI to "offer[]" and "provide" Smart Recovery's

---

[13] Although the FAC states that copies of the invoices are attached as Exhibit A, no such exhibit is in the record.  *Id.* ¶ 83.

DME  to its own "New-York based Provider(s) to dispense to their personal injury patients."
Dkt. No. 32-1 at 1.

Any element of an implied contract for which there might be a meeting of the minds as between Plaintiff and Supplies Plus-FL is subsumed by the MOU which has its own integration clause.  The parties contracted that it was Supplies Plus-MI that would be "responsible for billing and collection" of those fees in both markets.  *Id.*  And it was Supplies Plus-MI that would "pay [Smart Recovery]" as a result.  *Id.*  In essence, the pleadings and MOU clearly shows that Smart Recovery contracted with Supplies Plus-MI for the shipments at issue.  *See Landstar*, 900 N.W.2d at 658 ("the evidence clearly shows that [the third party] contracted with plaintiff for the shipments at issue.").  In light of that complete overlap, the express contract and implied contract cannot both exist—the exact same consideration provided by the Plaintiff could not support two enforceable contracts requiring the same performance and promising the exact same results.  *See Superior Ambulance Serv. v. City of Lincoln Park*, 173 N.W.2d 236, 239 (Mich. App. 1969) ("As in physics two solid bodies cannot occupy the same space at the same time, so in law and common sense there cannot be an express and an implied contract for the same thing existing at the same time." (internal citation and quotation marks omitted)).  Put differently, there is no implied in fact contract because there was a contract; Plaintiff was aware of, and contracted for, Supplies Plus-MI to handle distribution and collection of monies for its DME sold in New York. Supplies Plus-MI is liable to Plaintiff in a breach of contract action if it fails to fulfill that promise—and it would remain liable even if, as is not the case here, Plaintiff had alleged that Supplies Plus-FL took some action independent of Supplies Plus-MI that resulted in that breach.

Count II of the FAC is accordingly dismissed with prejudice.

### b.    Unjust Enrichment Against the Individual Defendants and Supplies Plus-FL

In Count V, Plaintiff alleges that "through their unauthorized use, distribution, and retention of the PainAway Home Care Laser 2.0 and sam Pro 2.0 DME devices as well as funds, accounts receivable, and other billing and collection associates with those devices," Defendants received a significant benefit from and at the expense of Smart Recovery for which Smart Recovery was not paid and which was "beyond the scope of the MOU," and that "would violate equity and good conscience to permit any of the Defendants to retain Smart Recovery's DME devices, accounts receivable, and/or funds obtained from the use of the PainAway Home Care Laser 2.0 and sam Pro 2.0 DME devices." FAC ¶¶ 135–39. Plaintiff claims to have been injured in the amount of no less than the invoiced price for Smart Recovery's DME, which is $442,188.00. *Id.* ¶ 139. "Under Michigan law, the theory of a contract implied-in-law is used interchangeably as an unjust enrichment claim." *Miller v. MSX-IBS Holding, Inc.*, 2016 WL 4138238, at *6 (E.D. Mich. Aug. 4, 2016).

Under Michigan law, the elements for an unjust enrichment claim are: "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. App. 1993). "In such instances, the law operates to imply a contract in order to prevent unjust enrichment." *Id.* "Unjust enrichment is grounded in the idea that a party 'shall not be allowed to profit or enrich himself inequitably at another's expense.'" *Gass v. Handley*, 2021 WL 3977187, at *11 (Mich. App. Sept. 2, 2021) (quoting *McCreary v. Shields*, 52 N.W.2d 853, 855 (Mich. 1952)). "The remedy for unjust enrichment is restitution." *Id.* (citing *Kammer Asphalt Paving Co, Inc. v. East China Twp Sch.*, 504 N.W.2d 635, 640 (Mich. 1993). "Because this doctrine vitiates normal contract principles, the courts employ the fiction with caution." *Storey v. Attends*

36

*Healthcare Prods.*, 2016 WL 3125210, at \*12 (E.D. Mich. June 3, 2016) (quoting *Kammer Asphalt*, 52 N.W.2d at 640).

As detailed above, Plaintiff has alleged that it was Supplies Plus-FL that would receive (or acquire) the New York-bound DME, bill for that equipment, and ultimately (whether through itself or Supplies Plus-MI) pay Plaintiffs. FAC ¶¶ 58, 61, 81–82. However, and again as above, the allegation and MOU are also clear that it was in fact Supplies Plus-MI that would be liable to Plaintiff for any failure with respect to the conduct described. And for those same reasons, Plaintiff has failed to state a claim for unjust enrichment. Smart Recovery has not alleged that Supplies Plus-FL took any action beyond what was contemplated in the MOU. In addition, Plaintiff has a right to recover all the monies it alleges it is owed as a result of the conduct of the five listed Defendants through a breach of contract action under that MOU, which makes Supplies Plus-MI responsible for any breach of the terms thereof. Therefore, Supplies Plus-FL has not "received and retained an independent benefit from the plaintiff's contractual services." *Morris Pumps*, 729 N.W.2d at 904 (internal citation omitted). There is no "inequity" where Plaintiff has a right to recover that value through a breach of contract claim against Supplies Plus-MI—Plaintiff "cannot pursue both a breach of contract and unjust enrichment claim for the same conduct." *Jarrett v. Archibald*, 2025 WL 2394869, at \*4 (E.D. Mich. Aug. 18, 2025); *see also Karaus v. Bank of N.Y. Mellon*, 831 N.W.2d 897, 906 (Mich. App. 2012) ("plaintiff has not shown that he conferred a benefit to Mellon, because Mellon acquired its interest in the property through assignment . . . not through any action of plaintiff.").

As to the individual defendants, Plaintiff alleges that Supplies Plus-MI "sold, assigned, or otherwise transferred the rights to its personal injury and worker's compensation receivables to a personal injury law firm in Florida, the Geer Law Firm, for approximately thirty (30) cents on

37

the dollar," and that "Mr. Geller and Dr. Super used the funds from this transaction to purchase a building in Michigan and a new condominium in Florida." *Id.* at 97–98. Additionally, Plaintiff "asserts that Mr. Geller and Dr. Super attempted to 'hide the monies received' by giving a $1.5 million personal loan to Attorney Stephen Falzon." *Id.* ¶ 99. Plaintiff further allege that Super, "with knowledge and material cooperation of Mr. Geller, then used the proceeds to purchase his single-family residence at 602 Viento De Avila, Tampa, Florida 33613 on November 29, 2022 for $1,435,500.00." *Id.* ¶ 100. Plaintiff alleges that this enrichment is "beyond the scope of the MOU" and seeks the same $442,188.00 under their unjust enrichment claims. *Id.* ¶ 139.

There are insufficient allegations tying the sale of the worker's compensation receivables to the DME supplied by Plaintiff. The MOU between the parties contemplates that a "secondary market will be Workers Comp Patient," Dkt. No. 32-1 at 1, but does not otherwise define what that term means, or if it is related to receivables. The allegations describe a relatively simple scheme whereby Smart Recovery provides DME to Supplies Plus-MI, Supplies Plus-MI supplies that DME to suppliers based in Michigan (and Supplies Plus-FL does the same for New York), and Supplies Plus-MI pays Plaintiff as a result. FAC ¶¶ 61–62. It is not clear at what point in that process Supplies Plus-MI "sold, assigned, or otherwise transferred" the personal injury receivables to the Florida law firm, how those receivables are connected to the Smart Supply DME, and whether Plaintiff was entitled under the MOU's payment provision (which they now disclaim) to any of those proceeds. Nor is it clear from the pleadings that Plaintiff ever could be, even with more robust allegations, entitled to those receivables—the MOU describes that the "net collections" are paid to Supplies Plus-MI, which in turn pays Smart Recovery 50% of that value. Dkt. No. 32-1 at 1. So long as Smart Recovery receives its cut of the proceeds (which it no longer seeks), it is of no moment whether the money is collected by Supplies Plus-MI itself,

or by another entity on its behalf.  Under the MOU, Smart Recovery has no entitlement to the receivables qua receivables.  The pleadings therefore do not plausibly allege the "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant."  *Barber*, 509 N.W.2d at 796.  Moreover, Plaintiff has not clarified how, even if those were connected, the individual defendants were unjustly enriched to the tune of the exact dollar value that they invoiced Supplies Plus-MI and Supplies Plus-FL for the DME.  Accordingly, Plaintiff has not stated a claim for unjust enrichment against the individual defendants.  Count V of the FAC is dismissed with prejudice.

### c.    Promissory Estoppel Against the Individual Defendants

In Count IV, Plaintiff brings a promissory estoppel claim against Super and Geller. Plaintiff alleges that the individuals made promises to Smart Recovery concerning the way the terms of the MOU would be implemented and failed to fulfill those promises.  *Id.* ¶¶ 129–34. "Under Michigan law, the elements of a promissory estoppel claim are: (1) a promise, (2) that the promisor should have reasonably expected to induce action of a definite and substantial character on the part of the promisee, (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Orleans Int'l, Inc. v. Mistica Foods, LLC*, 2016 WL 2851349, at *7 (E.D. Mich. May 16, 2016) (citing *Novak v. Nationwide Mut. Inc.*, 599 N.W.2d 546, 552 (Mich. App. 1999)).  "In determining whether a requisite promise existed, we are to objectively examine the words and actions surrounding the transaction in question as well as the nature of the relationship between the parties and the circumstances surrounding their actions."  *Novak*, 599 N.W.2d at 552.  "The doctrine of estoppel should be applied only where the facts are unquestionable and the wrong to be prevented undoubted."  *Marrero v. McDonnell Douglas Cap. Corp.*, 505 N.W.2d 275, 279 (Mich. App. 1993).  "The guiding principle in determining an appropriate measure of damages is

to ensure that the promisee is compensated for the loss suffered to the extent of the promisee's reliance. Damages awarded in promissory estoppel actions may include an award of lost profits, and out-of-pocket expenses incurred in preparation for performance or in the performing of the work that was induced by the promisor." *Best Team Ever, Inc. v. Conlan Abu*, 2025 WL 2793170, at \*11 (Mich. App. Sept. 30, 2025) (quoting *Joerger v. Gordon Food Serv., Inc.*, 568 N.W.2d 365, 369 (Mich. App. 1997)).

Plaintiff's promissory estoppel claim fails because Plaintiff has not alleged that the promises made by the individual Defendants were made in their individual capacity rather than as the officers and agents of Supplies Plus-MI. Super and Geller signed the MOU as the principals of Supplies Plus-MI. *See* Dkt. No. 32-1 at 4. The promises that Plaintiff attributes to Super and Geller in its promissory estoppel claim are the exact same promises memorialized in the MOU between Smart Recovery and Supplies Plus-MI. "It is a longstanding principle of Michigan law that corporate officers and agents generally are not personally liable for breach of contract on the part of the company." *Cowan v. Stubborn Rebel Farms*, 2025 WL 2459606, at \*4 (Mich. App. Aug. 26, 2025) (citing *Livonia Bldg. Materials Co. v Harrison Constr. Co.*, 742 N.W.2d 140, 146 (2007)) (concluding that signing a document in one's capacity as a corporate officer precluded individual liability); *see Innovation Ventures, LLC v. Liquid Mfg., LLC*, 2014 WL 5408963, at \*6 (Mich. App. Oct. 23, 2014) ("A corporate officer is generally not liable for the obligations of the corporation."); *Alexander v. UDV N. Am., Inc.*, 78 F. Supp. 2d 614, 624 (E.D. Mich. 1999) (same). Absent allegations that Super and Geller made promises that induced action distinct from or beyond those they made as representatives of Supplies Plus-MI in connection with the MOU, no claim for promissory estoppel can stand. *See Reed v. Hendrix*, 2012 WL 4801069, at \*7 (Mich. App. Oct. 9, 2012) (where Plaintiff has not alleged that an

individual made a promise to be "personally engaging plaintiffs' services, as opposed to engaging their service son behalf of" the entity for which they served as an agent, there is no promissory estoppel claim).

Additionally, Plaintiff's promissory estoppel claim against Super and Geller fails because, as alleged, the actions for which they now seek compensation were induced not by the promises of Super and Geller in their individual capacities, but by the MOU signed between the two parties that promised payment in exchange for provision of the DME.  As much is clear by the fact that if Smart Recovery had not provided Supplies Plus-MI with the DME contemplated in the MOU, Smart Recovery itself would have been in breach of the contract.  Where such reliance "was something [plaintiff] was already contractually bound" to do, "Plaintiff's promissory estoppel claim is defective as a matter of law." *Detroit Tigers, Inc. v. Ignite Sports Media, LLC*, 203 F. Supp. 2d 789, 800 (E.D. Mich. 2002).[14]  Thus, it cannot be said that it was the independent promises of Super and Geller, which merely reiterated the MOU's contractual guarantees, that induced Plaintiff to provide the DME to Supplies Plus-MI.  *See Henry v. Willacker*, 2004 WL 42277, at *2 (Mich. App. Jan. 8, 2004) ("defendant's alleged promise did not induce any reliance or forbearance on the part of plaintiff such that it would be unjust not to enforce it." (citing *Shmidt v. Bretzlaff*, 528 N.W.2d 760, 762 (Mich. App. 1995))).  Because the MOU addressed the exact exchange upon which Plaintiff now seeks to enforce a promissory estoppel claim, it is not plausible that Plaintiff relied not on that MOU but instead on an accompanying identical promise from Super and Geller in their individual capacities.

---

[14] The court in *Detroit Tigers* was applying Illinois law to the promissory estoppel claim.  The elements for promissory estoppel in Illinois parallel those in Michigan. *See Wagner Excello Foods, Inc. v. Fearn Intern., Inc.*, 601 N.E.2d 956, 963 (Ill. App. 1992).  *See Prentice v. UDC Advisory Servs. Inc.*, 648 N.E.2d 146, 152 (Ill. App. 1995).

Accordingly, Count IV of the FAC is dismissed with prejudice.

**D.    Conversion**

Count III alleges that each Defendant unlawfully converted the Smart Recovery DME. *Id.* ¶¶ 123–128.  Smart Recovery alleges that it has exclusive ownership of the PainAway Home Care Laser 2.0 and sam Pro 2.0 including the devices distributed pursuant to the MOU and that Defendants have assumed control of such devices and interfered with Plaintiff's rights to possess such devices beyond the limited rights conveyed under the MOU.  *Id.*  Defendants argue that the claim should be dismissed because Plaintiff did not demand the return of the DME and because, under the economic loss doctrine, a tort claim is precluded where it is not separate and distinct from a breach of contract claim.  Dkt. No. 40 at 24–25.  The parties agree, through their briefing, that New York law should be applied to this claim.  *See Cargo Partner AG v. Albatrans Inc.*, 207 F. Supp. 2d 86, 93 (S.D.N.Y. 2002), *aff'd,* 352 F.3d 41 (2d Cir. 2003); *see also* Dkt. No. 49 at 12–13; Dkt. No. 59 at 7–8.

The elements of a conversion claim under New York law are "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."  *Core Dev. Grp. LLC v. Spaho*, 157 N.Y.S.3d 416, 419 (1st Dep't 2021) (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006)).  "Even where 'possession of the property is originally lawful, a conversion occurs when the defendant refuses to return the property after a demand.'"  *Id.* (quoting *Matter of White v. City of Mount Vernon*, 633 N.Y.S.2d 369, 370 (2d Dep't 1995)).  However, no such demand is required if "in the interim, the recipient of the property has transferred or destroyed it, or if making the demand would be otherwise futile."  *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 451 (S.D.N.Y. 2014).  "The reason for this rule is simply 'that one in lawful possession shall not have such possession changed into an unlawful one until he be informed of the defect of

42

his title and have an opportunity to deliver the property to its true owner.'" *Reca v. Flashdot Ltd.*, 2026 WL 82702, at *13 (S.D.N.Y. Jan. 12, 2026) (quoting *Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 49 (2d Cir. 1996)). "In analyzing the demand-and-refusal rule, New York Courts have noted that '[a] demand need not use the specific word "demand" so long as it clearly conveys the exclusive claim of ownership. . . . By the same reasoning, a refusal need not use the specific word "refuse" so long as it clearly conveys an intent to interfere with the demander's possession or use of his property.'" *Polanco v. NCO Portfolio Mgmt.*, 132 F. Supp. 3d 567, 589 (S.D.N.Y. 2015) (quoting *Feld v. Feld*, 720 N.Y.S.2d 35, 37 (1st Dep't 2001)).

As alleged, the Defendants' possession of the DME became unlawful when it was retained "above and beyond the limited right to possess and/or use" it "pursuant to the aforementioned MOU." FAC ¶ 125. The MOU is not clear as to the rights in the DME that are conveyed to the Defendants upon shipment by Plaintiff. The MOU contemplates that the DME will be provided by Supplies Plus-MI to patients for a "rental period," but does not clarify whether or when Supplies Plus-MI is required to return the DME to Smart Recovery. Dkt. No. 32-1. Nor is it clear why, if the Defendants' rights in the DME were to be limited by some rental period, Plaintiff invoiced Supplies Plus-MI and Supplies Plus-FL for the full value of the DME provided. FAC ¶ 82. Plaintiff nevertheless alleges that it made a request to Rausch, the New York based distributor, to return the 25 devices that had gone to him in furtherance of the MOU, but that he only returned six of the twenty-five lasers. FAC ¶¶ 102–03. Rather than request the return of the DME from Supplies Plus-MI and Supplies Plus-FL, Plaintiff requested instead payment for the invoiced value in a demand letter sent through counsel to Super. *Id.* ¶ 105. After eventually reaching him by phone, Super advised that Smart Recovery communicate

43

through his counsel, Mr. Geller. *Id.* ¶ 106.

Plaintiff acknowledges it made no demand to the Defendants but argues that such a demand would have been futile as demonstrated by the conduct detailed in the complaint and so was not required by law. But the bar for futility is not as low as Plaintiff argues. Because Plaintiff made no demand whatsoever on Defendants for the return of the DME, instead requesting only payment of the invoices, it is not possible to say that such a demand would have been met with rejection. Moreover, although Plaintiff alleges that it attempted to get in contact with Super and Geller but got no response, *id.* ¶ 101, it later did in fact get in touch with Super and yet still made no demand for the return of the DME, *id.* ¶ 105–06. Plaintiff is essentially asking the Court to speculate that because Plaintiff was not paid pursuant to the MOU, no Defendant would have returned the physical DME upon request. That is insufficient to support a claim for conversion. *See TAP Manutencao e Engenharia Brasil S.A. v. Intern. Aerospace Grp., Corp.*, 127 F. Supp. 3d 202, 211 (S.D.N.Y. 2015) ("[Plaintiff] asks the Court to assume that if AIG had responded to that email with the appropriate address, [Defendant] would not have followed through and shipped the parts. That is essentially asking the court to assume that [Defendant] would have committed the tort of conversion."); *Rekor Systems, Inc. v. Loughlin*, 2022 WL 3020148, at *12 (S.D.N.Y. July 29, 2022) ("In short, by failing to provide evidence of a demand, Plaintiff has not shown liability on its conversion claim.").

Even if Plaintiff had made such a demand, the conversion claim would fail on the grounds that it is essentially seeking enforcement of the MOU. Under New York law, "a claim for conversion cannot be sustained where the underlying facts are not sufficiently distinguishable from a breach of contract claim." *Advanced Oxygen Therapy Inc. v. Orthoserve, Inc.*, 572 F. Supp. 3d 26, 38 (S.D.N.Y. 2021). "It is settled under New York law that a tort claim will not

44

arise 'where plaintiff is essentially seeking enforcement of the bargain.'" *In re Chateaugay Corp.*, 10 F.3d 944, 958 (2d Cir. 1993) (quoting *Sommer v. Federal Signal Corp.*, 593 N.E.2d 1365, 1369 (N.Y. 1992)).  That this claim is actually contractual is evident for several reasons.  First, the Defendants' continued possession of the DME is only illegal if there has been a breach of the MOU.  And second, Plaintiff seeks the exact same damages under its conversion claim as under the breach of contract claim, for the failure of Defendants to pay for the same services provided by Plaintiff.  It is clear too that it is damages Plaintiff seeks, not the return of the physical equipment, as it requested only payment in the demand letter sent to Super through counsel.  They have not plausibly alleged "wrongful acts beyond those which underlie the claim for breach of contract." *Advanced Oxygen Therapy Inc.*, 572 F. Supp. 3d at 38; *see Hiu Qun Zhao v. Yu Qi Wang*, 558 F. App'x 41, 43 (2d Cir. 2014) (summary order) (where a claim "turns entirely on the issue of breach, it sounds in contract, not conversion.").

Accordingly, Count III of the FAC is dismissed with prejudice.

### E.    Tortious Interference with Contractual Relations

In Count VII of the FAC, Plaintiff alleges a tortious interference with contractual relations claim against Super, Geller, and Supplies Plus-FL.  FAC ¶¶ 147–54.  Specifically, Plaintiff alleges that Super and Geller "knowingly and intentionally used their control over other companies, particularly Supplies Plus-FL, to bar and preclude plaintiff Smart Recovery from realizing the benefit of its bargain with Supplies Plus-MI as articulated in the July 12, 2022 MOU." *Id.* ¶ 150.  It continues that those individuals as well as Supplies Plus-FL "caused the contracting party, Supplies Plus-MI, to materially breach its obligations to Smart Recovery pursuant to the MOU by, *inter alia*, failing to compensate Plaintiff in accordance with the MOU, causing Supplies Plus-MI to convert funds intended to be consideration due Smart Recovery for the benefit of others, and causing Supplies Plus-MI to deny Smart Recovery access to Supplies

Plus-MI's Billing/Collections tracking system, and causing Supplies Plus-MI to misappropriate funds from gross collections that the MOU specifically contemplated to be used as consideration for Plaintiff providing its DME devices." *Id.* ¶ 153.

The parties do not agree on which law governs Plaintiff's tortious interference with contractual relations claim. "Under New York law . . . tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract." *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 335 (2d Cir. 2005); *see AllGood Ent., Inc. v. Dileo Ent. & Touring, Inc.*, 726 F. Supp. 2d 307, 314 (S.D.N.Y. 2010) (the "tortious interference claim . . . self evidently sounds in tort, not in contract law."). Therefore, the Court must apply interest analysis to determine which state's law should be applied. *Id.* Under New York's choice-of-law rules, "the first step . . . is to determine whether an actual conflict exists between the laws of the jurisdictions involved." *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012). An "actual conflict" exists where "the applicable law from each jurisdiction provides different substantive rules," *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998), and the differences "have a 'significant possible effect on the outcome of the trial,'" *Fin. One Pub. Co.*, 414 F.3d at 331 (quoting *Simon v. Philip Morris, Inc.*, 124 F. Supp. 2d 46, 71 (E.D.N.Y 2000)). The tort as alleged is that two individuals and two corporations based in Florida, one of which did business in New York, interfered in a contract between a Pennsylvania company and a Michigan company to do business in Michigan and New York. Therefore, Florida, New York, Michigan, and Pennsylvania law are potentially implicated. The standards for the tort differ between the different states. Florida and New York law both expressly require the Plaintiff to allege both that the defendant knew of the contract, and that there was breach and "damages resulting

46

therefrom." *See Sourcing Sols USA, Inc. v. Kronos Am., LLC*, 2011 WL 13223514, at *3 (S.D. Fla. Jan. 26, 2011); *Sokol Holdings Inc. v. BMB Munai, Inc.*, 726 F. Supp. 2d 291, 304 (S.D.N.Y. 2010). By contrast, Michigan and Pennsylvania law require only that there was a contract, breach, and unjustified instigation of the breach by the defendant. *See Barton v. Neely*, 2023 WL 8039408, at *8 (E.D. Mich. Nov. 20, 2023); *Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, 2017 WL 11573271, at *6 (M.D. Pa. Nov. 20, 2017);

Because there are differences in the tort as it might be applied, the Court applies interest analysis to determine the appropriate law. "In tort cases, the 'law of the jurisdiction having the greatest interest in the litigation [will] be applied.'" *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 2022 WL 1997207, at *15 (S.D.N.Y. June 6, 2022) (quoting *Krock v. Lipsay*, 97 F.3d 640, 645–46 (2d Cir. 1996)). "For the purposes of the interest analysis, 'the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.'" *Id.* (quoting *Miller v. Miller*, 237 N.E.2d 877, 879 (N.Y. 1968). Factors to be considered in applying the interest analysis include "[t]he contacts of the parties and occurrences with each jurisdiction . . . [,] the policies underlying each jurisdiction's rules, the strength of the governmental interests embodied in these policies, and the extent to which these interests are implicated by the contacts." *Fin. One Pub. Co.*, 414 F.3d at 337. Where, as here, the tort is one that regulates conduct "as it instructs people on how to interact with entities that have contractual agreements with third parties," "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *AllGood Entertainment*, 726 F. Supp. 2d at 315. "These include the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of

business of the parties, and the place where the relationship, if any, between the parties is centered." *Id.* (citing Restatement (Second) of Conflict of Laws § 145)).

Here, on balance, most of the contacts related to the allegedly tortious conduct are in Florida.  Both Super and Geller are Florida citizens.  Supplies Plus-FL is a Florida corporation.  And the alleged misuse of the funds was done with a Florida law firm to purchase property at least in part in Florida.  No other jurisdiction has as many ties to the "locus" of the tort.  The Court therefore applies Florida law.  *See AllGood Entertainment*, 726 F. Supp. 2d at 316 (analyzing choice of law as to interference in contractual relations with no "clear locus" and selecting New Jersey law on the basis that "the majority of the contacts related to the allegedly tortious conduct are in New Jersey.")

Under Florida law, the elements of tortious interference with a contract are: "(1) The existence of a contract, (2) The defendant's knowledge of the contract, (3) The defendant's intentional procurement of the contract's breach, (4) Absence of any justification or privilege, (5) Damages resulting from the breach." *Sourcing Sols.*, 2011 WL 13223514, at *3 (quoting *McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 397–98 (Fla. 1st DCA 1992)).  Here, the first two elements of the tort are plausibly alleged.  Plaintiff has alleged the existence of a contract, the MOU, and, by nature of the fact that Super and Geller are the principals of all the Supplies Plus entities, that the Defendants were aware of that contract.

To state a claim on the third element requires Plaintiff to plausibly allege that "the defendant influenced, induced, or encouraged the contracting part to breach." *Simmons v. USI Insurance Servs., LLC*, 2024 WL 3046252, at *2 (M.D. Fla. June 18, 2024) (quoting *Farah v. Canada*, 740 So. 2d 560, 561 (Fla. 5th DCA 1999)).  "In other words, the defendant must manifest a specific intent to procure a breach, and it must carry out that intent by inducing the

contracting party to breach." *Id.* (quoting *Fiberglass Coatings, Inc. v. Interstate Chem., Inc.*, 16 So. 3d 836, 838–39 (Fla. 2d DCA 2009)).  Plaintiff has not plausibly alleged inducement.  The only allegation speaking to intent is that Super and Geller "unjustifiably and intentionally instigated Supplies Plus-MI's breach of the MOU."  FAC ¶ 152.  Setting aside whether this claim is actionable against the two individual defendants in their individual capacity rather than in their capacity as officers of the corporations at issue, the allegation does not state a claim.  It is entirely conclusory, and merely echoes the legal standard to be applied.  *See Applied Concepts Unleashed, Inc. v. Matthews*, 2015 WL 11254380, at *4 (S.D. Fla. Feb. 19, 2015) (dismissing for failure to state a claim a tortious interference where the allegation was that the Defendant "induced, caused, and materially contributed" to the breach); *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1281–82 (11th Cir. 2015) (affirming dismissal of complaint where it contained only "bare and wholly conclusory statements that [defendant] induced or encouraged" the breach).[15]

The claim would fail too for the independent reason that under Florida law, a cause of action "is recognized only when the interference is by one who is not a party to that relationship."  *Radde v. BMS Intermediaries, Inc.*, 2019 WL 8892618, at *4 (S.D. Fla. Mar. 6, 2019) (quoting *Buckner v. Lower Florida Keys Hosp. Dist.*, 403 So. 2d 1025, 1028 (Fla. 3d DCA 1981)).  And "[a] defendant is not a 'stranger' to a business relationship if the defendant has any beneficial or economic interest in, or control over, that relationship."  *Id.* (quoting *Palm Beach County Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009)); *see Bautech USA, Inc. v. Resolve Equipment, Inc.*, 2023 WL 4186395, at *7 (S.D. Fla. June 26,

---

[15] Absent inducement or unjustified instigation, there is no claim for tortious interference with contract in Florida, New York, Michigan, or Pennsylvania.

2023); *Paragon Insurance Holdings, LLC v. Phillips*, 2025 WL 1370178, at *3 (M.D. Fla. May 12, 2025) ("Indeed, 'a tortious interference claim will generally not lie against employees and representatives of the contracting entities.'" (quoting *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1099 (Fla. Dist. Ct. App. 1999))).  Defendants Super and Geller are the only identified members of Supplies Plus-MI, and the only individuals to sign the MOU on behalf of the company.  They are also the only identified members of Supplies Plus-FL.  Plaintiff has alleged that Supplies Plus-FL has a direct role in carrying out the sales and repayment contemplated in the contract with Supplies Plus-MI.  None of the entities, then, are a "stranger" to the business relationship between Smart Recovery and Supplies Plus-MI.  It is not clear on the facts of this case, where the two individual defendants are also the only two identified members of Supplies Plus-MI, how it could be true that they would, as an external force, induce a company that they control to breach a contract that they negotiated and signed.

## CONCLUSION

The motion to dismiss the FAC is GRANTED IN PART and DENIED IN PART.  To summarize, Defendants' motion to dismiss is granted as to Counts II, III, IV, V, VI, and VII.  All are dismissed with prejudice, as an amendment would be futile.  *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).  The motion to dismiss is denied as to Count I.  The Clerk of Court is respectfully directed to close Dkt. No. 39.


SO ORDERED.

Dated: March 20, 2026
       New York, New York                          _____
                                                        LEWIS J. LIMAN
                                                    United States District Judge

50